MATTIE A. KENDRICK v. MUTUAL BENEFIT LIFE INSUR-
ANCE CO.

(Decided April 4, 1899).

*Life Insurance Policy—Construction—Premium—Estoppel
—Issues.*

1. Possession of the policy, at the death of the insured, makes out
   a *prima facie* case.

2. An acknowledgment in the policy of the receipt of the premium
   estops the company, so far as payment of premium is con-
   cerned, to contest the validity of the policy, in the absence
   of fraud, although as a mere receipt for money it is only
   *prima facie*, and like other receipts is rebuttable by proof to
   the contrary. In analogy to the same rule as to deeds, the
   receipt of the consideration money expressed therein may
   be shown to be untrue—but paid, or not paid, the title passes
   all the same.

3. The uniform rule of construction of insurance policies is, that
   if reasonably susceptible of two constructions, that one will
   be adopted which is most favorable to the insured.

4. Instruction to agents, that if the first premium was paid more
   than thirty days after due there must be a health certificate,
   is evidence against the company, recognizing that indulgence
   on the payment is allowable, but is not evidence against the
   insured, who may rely upon a provision in the policy itself
   that such payment must be made during life.

5. Where every phase of defendant's contention could be and was
   presented without prejudice, under the issue submitted by
   the Court, a refusal to submit other issues asked for, is not
   error.

CIVIL ACTION upon the insurance policy on the life of
John F. Kendrick, taken out by him for the benefit of the
plaintiff, his wife, tried before *Starbuck, J.,* at October
Term, 1898, of MECKLENBURG Superior Court.

The policy issued on July 15, 1897, and the insured

died on September 15, 1897. The policy contained a receipt for the first premium, although in fact it was not paid until a few hours before the death of insured, on the day of his death. A recovery was resisted, principally on the ground of invalidity of the payment. A single issue was submitted to the jury: Is the defendant company indebted to the plaintiff, and if so, in what sum?

A number of other issues were asked for by the defendant, but were declined by the Court. Defendant excepted.

The issue was found in favor of plaintiff, and judgment rendered accordingly. Appeal by defendant. The facts are substantially stated in the opinion.

*Messrs. Burwell, Walker & Cansler,* for defendant (appellant).

*Messrs. Jones & Tillett,* for plaintiff.

CLARK, J. John F. Kendrick applied for insurance on his life in the defendant company for the benefit of his wife, the plaintiff, and on the 15th of July, 1897, the defendant issued its policy in accordance with the terms of the application, which was delivered by its agent to him, a few days thereafter. He was afterwards taken ill with typhoid fever and died on the 15th of September, 1897. The policy recited the payment of the premium, though in fact it was not paid until a few hours before, and in fact on the same day on which the insured died, the payment being then made for him by a friend and accepted by the local agent with full knowledge of Kendrick's critical condition. This agent had theretofore indulged the payment, stating that it would be sufficient if the payment was made during Kendrick's life. The policy contained a provision: "This policy does not take effect until the first premium shall have been actu-

ally paid during the lifetime of the insured." There was in the instructions of the company, in the hands of its agents, a further provision, that "When a premium is paid more than thirty and within sixty days after due, a certificate of good health, signed by the applicant, will be required." It was not shown that John F. Kendrick had notice of this instruction.

These in substance were the facts. The plaintiff, to whom the policy was payable, was in possession of the policy, and the death of the insured being admitted, this made out a *prima facie* case. In the absence of evidence, the policy is presumed to have been delivered at the time it bears date. *Meadows v. Cozart,* 76 N. C., 450; *Lyerly v. Wheeler,* 34 N. C., 290. The authorities are numerous and quite uniform that the acknowledgment in the policy of the receipt of the premium estops the company to test the validity of the policy on the ground of non-payment of the premium. In so far as it is a mere receipt for money, it is only *prima facie* like other receipts, and will not prevent an action to recover the money if not in truth paid; but in so far as it is a part of the contract of insurance, it can not be contradicted by parol to invalidate the contract, in the absence of fraud in procuring the delivery of the policy. The rule is thus stated in 2 Biddell on Insurance, section 1128: "As a general rule it has been held in the United States that while such a receipt will prevent the insurer from proving the premium was unpaid in order to show the policy was void from its inception, it may be contradicted in order to show, on a suit for premium, that no payment had been made," citing numerous cases in the note. To same effect the law is summed up and stated in 19 Am. Enc. of Law, 1126; *Bosch v. Ins. Co.,* 35 N. J. Law, 429, in a very clear statement by Beasley, C. J., citing *Provident Insurance Co. v. Fennel,* 49 Illinois, 180;

*Insurance Co. v. Insurance Co.,* 20 Barb., 471. Chancellor Kent says (3 Com., 260): "the receipt of the premium in the policy is conclusive of payment and binds the insurer unless there is fraud on the part of the insured." To like purport, *Insurance Co. v. Gilman,* 112 Ind., 7; *Goit v. In. Co.,* 25 Barb., 189, 192; *Insurance Co. v. Cooker,* 9 Heisk, 606; *Ins. Co. v. Wolf,* 37 Ill., 354, 356; *Ins. Co. v. Mueller,* 77 Ill., 22, 24; Phillips on Insurance, sections 514, 515; *Farnum v. Ins. Co.,* 17 Am. St. Rep., 240 (83 Cal., 246); *Michael v. Ins. Co.,* 10 La. Ann., 737; *Ins. Co. v. Cashow,* 41 Md., 60, 76. In striking analogy is the same rule as to receipts in deeds. In 3 Washburn R. P., 614, the fourth rule applying to receipts in deeds is as follows: "Although it is always competent to contradict the recital in the deed as to the amount paid, in an action involving the recovery of the purchase money, or as to the measure of damages, in an action upon the covenants in the deed, it is not competent to contradict the acknowledgment of a consideration paid, in order to affect the validity of the deed in creating or passing a title to the estate thereby granted." This is quoted and approved in *Barbee v. Barbee,* 108 N. C., at page 584, and it may be said in passing, that the difficulty in reconciling opinions expressed in that case was due to the failure to note the double aspect of a recital in a deed of payment as being a mere receipt for money, and therefore only *prima facie,* in an action to recover the money, and as being sometimes also a part of the contract and therefore not to be impeached, except for fraud, etc., when the validity or effect of the contract depends on prepayment, a distinction which is clearly pointed out by *Ashe, J.,* in *Harper v. Dail,* 92 N. C., 394, citing *Wilson v. Derr,* 69 N. C., 137.

The above proposition being true even when the policy is made payable to the estate of the insured, *a fortiori* the de-

fendant company is estopped when the beneficiary is a third party. *Kline v. Benefit Association,* 60 Am. Rep., 706 (111 Ind., 462).

Certainly it is not the defendant who can except because the Court charged the jury: "If when the policy was handed to Kendrick by the agent it was not the understanding that it should then take effect as a policy, then Kendrick could not, by sending this amount as a payment, create or put in force a contract of insurance, although the agent during Kendrick's sickness may have agreed and directed that he should do so. On the other hand, although defendant may show that as a fact the recital of the payment of premium was not true, yet if the policy was delivered to operate as a contract of insurance, it can not contend that the policy was invalid because the premium was not paid" (at time of delivery). If it be conceded contrary to authorities above recited that the proviso in the policy that it shall not be effective "unless the first premium shall have been actually paid during the lifetime of the insured," removed the estoppel arising from the acknowledgment of the receipt of the money, the condition was complied with by the actual payment of the money in the lifetime of the insured, which related back to the date of the policy. The instruction to agents as recited in the letter of the general agent, that if the premium was paid more than thirty days after due there must be a health certificate, is evidence against the company, that credit, or indulgence on payment was allowable, but the terms that after thirty days' delay a health certificate is required is not binding on the insured, who is not shown to have had knowledge of it, and who (even if he had) might well rely upon the simple provision in the policy itself that the payment must be made "during life" and the assurance of the agent that if it was done it would be sufficient. *Horton v. Ins. Co.,* 122 N. C., 498; *Ins. Co. v. Wilkinson,* 80 U. S., 222.

It is true in *Whitley v. Insurance Co.,* 71 N. C., 480, it is held that the representation of good health continues up to the consummation of the contract. There, the policy was not delivered till more than a month after the death of the insured, and the agent was ignorant of the condition of the insured. In the present case, the contract was consummated by the unconditional delivery of the policy acknowledging receipt of payment, and if that acknowledgment can be varied by the provision that the policy was not valid unless the premium was "actually paid during life," this condition was complied with. There was no suppression of information or fraud, for the agent knew the condition of the insured when he received the premium. The authorities cited in Whitley's case, *supra,* do not support the construction sought to be placed on that opinion by the defendant. It would be contrary to every rule of construction to restrict the obligation of a promisor beyond the plain meanings of his words. On the contrary, the uniform rule of construction of insurance policies is that if reasonably susceptible of two constructions, that one will be adopted which is more favorable to the insured. *Bank v. Ins. Co.,* 95 U. S., 673.

. In *Hoffman v. Insurance Co.,* 32 N. Y., 413, the rule is laid down by the New York Court of Appeals as follows: "It is a rule of law, as well as of ethics, that where the language of a promisor may be understood in more senses than one, it is to be interpreted in the sense in which he had reason to suppose it was *understood* by the promisee. *Potter v. Insurance Co.,* 5 Hill, 147, 149; *Barlow v. Scott,* 24 N. Y., 40. It is also a familiar rule of law that if it be left in doubt, in view of the general tenor of the instrument and the relations of the contracting parties, whether given words were used in an enlarged or a restricted sense, other things being equal, that construction should be adopted which is most beneficial to the promisee. Coke Lit., 183; Bacon's

KENDRICK v. LIFE INSURANCE CO.

Law Maxims, Teg. 3; *Doe v. Dixon,* 9 East, 16; *Marvin v. Stone,* 2 Cowen, 806. This rule has been very uniformly applied to conditions and provisos in policies of insurance on the ground that, though they are inserted for the benefit of the underwriters, their office is to limit the force of the principal obligation."

In *Goodwin v. Assurance Society,* 97 Iowa, 226, the Supreme Court of Iowa states the rule as follows: "The tenets established for the guidance of the Courts in such matters are well understood, and no one is better established than that in all cases the policy must be liberally construed in favor of the assured, so as not to defeat, without a clear necessity, his claim for indemnity. And when the words used may, without violence, be given two interpretations, that which will sustain the claim and cover the loss should be adopted." The Court cites a large number of authorities to sustain the proposition, and indeed the authorities seem uniform.

Besides, the agent of the company put the same construction upon the policy and said that it would be sufficient if the payment was made "during lifetime," and if this had misled the insured it would have been fraud for the company to avail itself of a forfeiture thus procured. *McMasters v. Ins. Co.,* 78 Fed. Rep., 36 (C. C. A.); *Ins. Co. v. Chamberlain,* 132 U. S., 304. The agent directed the "check to be mailed," and the time of the mailing was the time of payment (the check being honored on presentation). *Whitley v. Ins Co., supra.*

Every phase of the defendant's contention could be and was presented without prejudice under the issue submitted by the Court, and therefore the refusal to submit other issues, though asked, is not error. *Pretzfelder v. Ins. Co.,* 123 N. C., 164.

Affirmed.                                            124—21