This case was before us at Fall Term, 1910, and under the name of Powellv. Insurance Co. is reported in 153 N.C. at p. 124 et seq. Since that time the former administrator of the beneficiary under the policy has died, and the present plaintiff, as his successor in the administration of the estate of H.D. Teel, has taken his place in the record. The facts of the case are somewhat changed from those we then considered, as will appear by the following verdict of the jury:
1. Did H.D. Teel in his application for the policy, represent that he did not then have, and never had, any habit of taking opium, or any of its preparations, or any narcotics? Answer: Yes.
2. Did H.D. Teel, on the date of said application, have any habit of taking opium, or any of its preparations, or any narcotics? Answer: No.
3. Was said representation a material inducement to the issuing of the policy by the defendant? Answer: Yes.
4. Was said Teel agent and manager of defendant at Tarboro, on 6 December, 1906? Answer: No.
5. Was said policy delivered to said Teel, and did it become a consummated contract between him and defendant on 6 December, 1906? Answer: Yes.
6. Did said Teel, on 10 May, 1907, have the habit of taking opium or any of its preparations, or any narcotics? Answer: No.
7. Was there a material change for the worse in the health of said Teel, prior to 10 May, 1907? Answer: No.
8. Was the said policy delivered to said Teel, and did it become a consummated contract between said Teel and the defendant on 10 May, 1907? Answer: Yes.
The other facts necessary to an understanding of the case are stated in the opinion. The court rendered a judgment upon the verdict for the plaintiff, and the defendant appealed, after duly noting exceptions to the rulings of the court.
After stating the case: The answers to the first (101) and third issues were not seriously contested by the plaintiffs, and could not well have been resisted, but they have become immaterial by reason of the answer to the second issue in favor of the plaintiff. Whether the deceased was addicted to the habitual use of opium in any of its forms, or of any other narcotic, was a pure issue of fact to be determined by the jury upon the evidence, which was conflicting. There *Page 82 
was sufficient evidence, in law, to support the finding of the jury, and when this is the case and it is claimed that the jury have given a verdict against the weight of all the evidence, the only remedy is an application to the trial judge to set aside the verdict for that reason. We will not review his ruling upon such a motion, except where it clearly appears that there has been a gross abuse of his discretion, which, of course, will be of exceedingly rare occurrence, and so much so that in our procedure it may be considered as almost a negligible quantity. There was no such abuse in this instance.
Under the fourth and fifth issues, the jury, by their answers thereto, have evidently found as facts that H.D. Teel was not agent or manager of the defendant company on 6 December, 1906, when the policy was sent to him from the home office, and that the company did not require payment of the premium in advance, but delivered the policy to H.D. Teel and trusted him for the payment of the premium, the understanding being that the policy should immediately become effective upon its delivery and without prepayment of the premium as a condition upon which it should take effect. We cannot escape this conclusion after a careful perusal of the evidence and the charge of the court, and considering them in connection with the issues four and five, as answered by the jury.
The defendant offered strong evidence to show that H.D. Teel was the defendant's agent and local manager on 6 December, 1906, but there was some evidence on the other side of the question, introduced by the plaintiff, and while it may not be very convincing or even satisfactory, we are not willing to say that it was altogether destitute of probative force, but we do mean to say that it was weak or insufficient to (102) warrant the finding of the jury. It was some evidence, and was properly submitted to the jury, and the defendant having failed to have the verdict set aside by the judge below, because it was against the weight of the evidence, must abide by the result as final and beyond our control. We can review by appeal "any decision of the courts below upon any matter of law or legal inference," but in jury trials, at least, our jurisdiction ends when that is done. We cannot review findings of fact in such cases. Const., Art. IV, sec. 8. And what we have said applies equally to the sixth and seventh issues. There was conflicting evidence which carried the questions to the jury, and we are concluded by their findings.
Returning to the fifth issue for further consideration, we find that the court instructed the jury, if they found that H.D. Teel received the policy from the insurance company, not as its agent or manager, but as an ordinary applicant for insurance, having no such relation to it, and he was trusted to pay the first premium, instead of paying it in *Page 83 
advance, they should answer the fifth issue "Yes"; but if the insurance company sent the policy to H.D. Teel, he then being its agent or manager, to hold the policy for the company until the premium was paid, and not to deliver it to himself until it was paid, or if H.D. Teel received the policy, not as agent or manager, and laid it aside until he could pay the premiums, and it was not paid by him on 6 December, 1906, they should answer the issue "No." We see no valid objection the defendant can make to this instruction. There was evidence of the facts it embodied sufficient to support either hypothesis stated in it, and the jury manifestly found that H.D. Teel was not agent at the time, and received the policy as an ordinary applicant, having no confidential relation with the company, and that the latter had trusted him to pay the premium. If that be the case, the policy was delivered and in force on 6 December, 1906. If there had been an actual delivery of the policy, nothing else appearing, the production of it at the trial by the plaintiff, who is the beneficiary, makes a prima facie case for him. Perry v. Ins.Co., 150 N.C. 143, citing Kendrick v. Ins. Co., 124 N.C. 315; Grier v.Ins. Co., 132 N.C. 542; Rayburn v. Casualty Co., 138 N.C. 379;Waters v. Annuity Co., 144 N.C. 663. That the company (103) may waive the prepayment of the premium and give credit for the same is but to state a self-evident principle, and this waiver may be shown by direct proof that credit was given, or may be inferred from the circumstances as well. Bodine v. Ins. Co., 51 N.Y. 117. No man is bound to insist upon his rights, and an insurance company may disregard the provision requiring prepayment of the premium as a condition of imparting vitality to the policy, and agree, either expressly or impliedly, that it will accept the promise of the applicant to pay on demand or at a future day. The doctrine is thus clearly stated in Vance on Insurance, at p. 178: "Even though the parties may have expressly agreed that the contract shall not be deemed complete until payment of the premium in cash and in full, this stipulation may be waived by the insurer or any of its agents having competent authority. As a general rule, any agent having power to execute and issue contracts on behalf of the insurer has power to waive a condition of prepayment. And an absolute delivery of the policy by such an agent, without payment of the premium, under such circumstances as will justify an inference that credit is to be given, will constitute a waiver of a condition of prepayment. It seems that an intention to give credit may be inferred from the mere fact of unconditional delivery, without requiring present payment. Nor do the courts show great readiness to find that a delivery was made subject to a condition of immediate payment." The cases in this Court, already cited, are substantially to the same effect.
The sixth and seventh issues involved matters of fact alone, there *Page 84 
being, in our opinion, evidence on both sides of the questions submitted to the jury in them. Our remarks as to the second issue are generally applicable to these two issues. We are concluded by the verdict.
In regard to the seventh issue, it was urged before us by the learned counsel for the defendant, that the verdict upon the fifth and seventh issues was inconsistent, as the policy could not have been delivered (104) and become effective on two different dates. But we think the answers to these issues are reconcilable, if it is necessary to bring them into harmony in order to sustain the verdict. It would seem to be immaterial on which of the two dates it took effect. If on either of them, it is valid and enforcible in view of the special facts of this case. But they are consistent, as the jury evidently meant that the policy was delivered on 6 December, 1906, and continued in force until and including 10 May, 1907; but if they were mistaken in law, for any reason, as to its being in force on 6 December, 1906, then upon the facts as they found them to be, it took effect on 10 May, 1907. It is true that there is evidence that H.D. Teel was the agent of defendant on 10 May, 1907, though there is no special finding of the fact. We will assume it to be true. In this connection, there was evidence that H.D. Teel, on 10 May, 1907, gave his note to the agents of the company for $69.35, the amount of premium on this policy, and it was assigned by them to the company and mailed to the company on the same day. It was received by the company without objection, and has been retained ever since, so far as appears.
The defendant contends, though, that there was a rule of the company, in force at the time of these transactions, forbidding an agent to deliver a policy sent to him for delivery, if more than sixty days since it was issued have elapsed, unless the applicant for the policy has furnished the company with a new physical examination or health certificate, given by a physician.
If we concede, for the sake of illustration and argument, that this point is properly raised by the prayer for instruction, the rejection of which is the subject of the twenty-eighth exception, the prayer not being addressed to any particular issue, nor any finding asked in regard to it on the eighth issue, which is sufficient to embrace the question intended to be raised, we do not think it defeats the plaintiff's right of recovery. If there was no such examination, and the rule has been established in such a way as to have bound H.D. Teel to its observance, and the policy, therefore, was issued in violation of the rule, it appears that the company, in February and April, 1907, wrote letters to their agents at Tarboro, N.C. having possession of this and other policies which had been issued for more than sixty days, (105) and called for the payment of the premiums or the return of the *Page 85 
policies, but not insisting upon a new physical examination. These letters were introduced by the defendant at the trial. When we consider these facts and the failure of the defendant to return the premium note and insist upon a compliance with the rule requiring H.D. Teel to furnish to it an examination as to the state of his health, the doctrine of waiver is again applicable. The note of H.D. Teel recited that it was given for the first premium ($69.35) due on the policy of insurance issued to him. The company must have known that there had been no new medical examination, as he was required to furnish it to the company, and failed to do so. Under the circumstances it would not be right for the company to retain the premium note, with knowledge that the alleged rule had not been complied with, and then, after the loss, to insist that the policy was not valid for that reason. And it is this element in the transaction that induces the law to declare a waiver of the condition or to hold the company estopped to set it up in defense of an action upon the policy. It is partly based upon the eminently just maxim that if a party is silent when he should speak, he will not be permitted to speak when justice demands that he should be silent. He will not be allowed to take two chances, when he should be entitled to only one. If we put the case completely, it is this: The law will not allow the company to hold the premium upon the chance that there may be no loss, and, if there is a loss, to deny its liability upon the policy. Acceptance and retention of the premium, with knowledge of the facts, express or to be inferred, shows that it elected to consider the policy in force. Rayburn v. Casualty Co., 138 N.C. 379. Brief reference to the authorities and precedents will be sufficient to show the state of the law upon this question: "The acceptance by an insurance company, with knowledge of facts authorizing a forfeiture or avoidance of the policy, of premiums or assessments which were in no degree earned at the time of such forfeiture or avoidance, constitutes a waiver thereof. This waiver is based on the estoppel of the company to declare void and of no effect insurance for which, with knowledge of the facts, full compensation has been received. This rule (106) is particularly applicable where the company's claim is based on a right of cancellation and return of premiums, rather than on a distinct forfeiture." 3 Cooley Insurance, 2683, 2684, 2686, and the numerous cases cited in the notes. It is said in Ins. Co. v. Raddin,120 U.S. 183: "The only question upon the instructions of the court to the jury which is open to the defendant on this bill of exceptions is whether, if insurers accept payment of a premium after they know that there has been a breach of a condition of the policy, their acceptance of the premium is a waiver of the right to avoid the policy for that breach. Upon principle and authority, there can be no doubt that it is. To hold *Page 86 
otherwise would be to maintain that the contract of insurance requires good faith of the assured only, and not of the insurers, and to permit insurers, knowing all the facts, to continue to receive new benefits from the contract while they decline to bear its burdens. Ins. Co. v. Wolf,95 U.S. 326; Wing v. Harvey, 5 D. M. G., 265; Frost v. Ins. Co., 5 Denio, 154; Bevin v. Ins. Co., 23 Conn. 244; Ins Co. v.Slockbower, 26 Pa., 199; Viele v. Ins. Co., 26 Iowa 9; Hodson v. Ins. Co.,97 Mass. 144."
The other questions raised by the defendant, which are subsidiary to those we have discussed and dependent upon them, require no separate consideration.
This case has been tried three times in the court below, and heard twice in this Court. It has been very ably and learnedly presented to us by counsel, and we have given to it a most patient and thorough examination. After doing so, we have not been able to discover any error in the trial and proceedings below.
No error.
Cited: Johnson v. R. R., post, 451; Murphy v. Ins. Co., 167 N.C. 336.
(107)