**Margaret V. GURLEY, Plaintiff,**

v.

**LIFE & CASUALTY INSURANCE COMPANY OF TENNESSEE, Defendant.**

**Civ. No. 865.**

United States District Court Middle D. North Carolina, Greensboro Division.

June 17, 1955.

Brooks, McLendon, Brim & Holderness, Greensboro, N. C., for plaintiff.

Smith, Moore, Smith & Pope, Greensboro, N. C., for defendant.

HAYES, District Judge.

The defendant's agent W. G. Ware solicited Henry T. Gurley to take a mortgage retirement insurance plan of life insurance to retire the mortgage on a new home of Gurley and represented to him that if he paid the premium when the application was made, the policy would become effective and protect him when the company approved the application. He likewise advised him that $99 was the full premium. This amount was paid when the application was made on July 17, 1952. The application and premium were forwarded immediately to the district manager's office at Greensboro.

Ware signed and delivered to Gurley the defendant's printed form of receipt. "Received from Henry T. Gurley $99.00 Dollars. Received of ——— the sum of (ninety Nine) dollars. On account of application made this day to the Life and Casualty Insurance Company of Tennessee. If this sum is equal to the full first premium on the policy applied for then if the company shall be satisfied that at the time of the completion of the medical examination * * * that the risk was acceptable to the company under its rules, for the plan and amount of insurance herein applied for at the rate of premium declared paid, then the insurance applied for shall be in force as of the date of the completion of the medical examination * * * but otherwise no

insurance shall be in force under said application unless and until a policy has been issued and delivered, and the full first premium stipulated in the policy has actually been paid to and accepted by the Company during the life time and insurability of the applicant. The above sum shall be refunded upon request if the application is declined or if a policy is issued other than as applied for and is not accepted by the applicant."

The Company completed its medical examination, approved the plan for the amount of insurance applied for and issued its policy No. 493585 Aug. 1, 1952, and fixed the date of quarterly premiums as the first day of August, November, February and May. Because of a complaint the applicant had made when having a physical check-up, the Company applied Class B rate and increased the quarterly premiums to $122 and declined to waive premium on $300 for disability.

On August the 1st the Company forwarded the policy to its district manager at Greensboro with an accompanying letter as follows:

"Dear Sir:
    Re: Policy 493585 Henry T.
        Gurley, Agent W. G. Ware
"We regret to advise that we could not issue the above policy as applied for. It was necessary to make the following changes: Rated Table 'B'. Waiver of premium not granted.
"We trust you will be able to place the policy as issued."

The policy contains two pertinent paragraphs:

"This policy shall not take effect until the first premium shall have been paid and the contract delivered and accepted during the lifetime of the insured.

"However, if the premium is paid in cash when the application is taken and the applicant is insurable for the plan of policy and amount applied for, the risk shall be assumed as of that date subject to all of the terms and conditions of the policy."

When the policy was offered to the insured he protested against being rated "B" and the agent agreed to take it up with the Company and see if it would not change its rating. The district manager wrote a very strong letter to the Company requesting a review. On August 19th the Company returned the policy to the district manager and stated that it had carefully reviewed the case and declined to change the rate. The district manager returned the policy to agent Ware and he informed applicant that the rate could not be changed. Applicant asked Ware to inquire if the Company would issue a policy for a less amount at the standard rate as he had obtained a policy in another company on a standard rate. The Agent agreed to inquire at the district meeting being held in Greensboro on September 18th and would call applicant on his return.

The agent called applicant that night around 10 P.M. and told him the company would not issue a policy for any amount on less rate. The applicant then told Agent Ware that he would accept the policy as it was. There was some talk about bringing it over that night but they mutually agreed for the agent to bring it next morning on his way to the office because it was so late that night. But applicant died about 6 A.M. next morning of a heart attack, and the policy was never manually delivered nor was the $23 additional premium paid.

It should be noted that when the policy was transmitted to the district manager, there were enclosed the official receipt to be countersigned by agent Ware and a voucher for commissions showing Ware's commissions were $55.04 and Pike's (Ware's superintendent) were $6.12. These and the policy were in Ware's possession on Sept. 18th at the time of the telephone conversation.

A few days after the death of Gurley, agent Ware and his superintendent Pike of the Burlington office came and tender-

ed a check to the widow for a refund of the $99 which she refused.

■■ This action is brought by the widow who is designated as beneficiary in the policy, to recover under the terms of the policy. The defendant denies that the policy was ever in force, relying primarily on North Carolina Bank & Trust Co., v. Pilot Life Ins. Co., 206 N.C. 460, 174 S.E. 298, and Curtis V. Prudential Co. of America, 4 Cir., 55 F.2d 97, and the authorities therein cited. The latter case was decided before Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, and declared the common law according to federal interpretation and is not decisive of the instant case. If the Bank case above is applicable to the facts in the instant case, it would terminate this case in favor of the defendant. In that case it is manifest that the applicant paid no part of the premium, was unable to pay it and continued to promise to pay at a future date. The application, the policy and the receipt all showed that the policy was never intended to become effective unless and until the first premium was actually paid and the policy delivered during the lifetime and good health of the insured; that the agent had no authority to waive these considerations and there was no evidence that either party treated the transaction as a completed contract. On the facts of that case, the decision is in line with the weight of authority throughout this country. A mere soliciting agent of a life insurance company ordinarily can not waive the payment of the premium and bind the company under a policy in the face of a provision therein putting the applicant on notice that the agent has no such authority. But there are exceptions to the rule. The authority of the agent is to be determined by what the principal permits him to do and the extent and nature of the business the agent transacts for his principal and his authority is not controlled solely by the limitations under his employment or those contained in the policy. Hill v. Philadelphia Life Insurance Co., 200 N. C. 115, 122, 156 S.E. 518; Thomas v.

Prudential Insurance Co. of America, 4 Cir., 104 F.2d 480.

Thus in Stallings v. Occidental Life Insurance Co., 229 N.C. 529, 50 S.E.2d 292, 293, the policy provided that it shall not take effect until the first premium is paid and that no agent has authority " 'to deliver any policy contrary to the provisions hereof.' " The applicant paid $5 on the premium of $25.41 when the application was made. The agent delivered the policy and signed the receipt and left them with the insured according to the agent, for inspection; but according to the insured, they were delivered with the agreement that he would pay the balance when his first check came. C. J. Stacy for the court said: "The case turns on whether there was a conditional deilvery of the policy for purposes of inspection, as contended by the defendant's agent, or an absolute delivery upon acceptance of applicant's promise to pay balance of first premium out of the first government check thereafter received by him." The court cited Pender v. North State Life Insurance Co., 163 N.C. 98, 79 S.E. 293; Murphy v. Lafayette Mut. Life Ins. Co., 167 N.C. 334, 83 S.E. 461; Underwood v. State Life Ins. Co., 185 N.C. 538, 117 S.E. 790.

■ The law in North Carolina is well settled that when insurance is applied for, and afterwards a policy is issued and delivered, it is based on the status of the insured at the time of the application, and the company assumes the risk after the date of the policy. Grier v. Mut. Life Ins. Co., 132 N.C. 542, 44 S.E. 28 and Rayburn v. Pennsylvania Casualty Co., 138 N.C. 379, 381, 50 S.E. 762.

If the policy of insurance is delivered reciting the payment of the premium, the contract is complete and the company can not vitiate the contract by showing the non-payment of the premium. "If the premium in fact is not paid, the acknowledgment of payment, so far as it is a receipt for money, is only prima facie, and the amount can be recovered; but so far as the acknowledgment is contractual, it cannot be contradicted so as to

invalidate the contract." Grier v. Mut. Life Ins. Co. supra [132 N.C. 542, 44 S.E. 29]; Kendrick v. Mut. Ben. Life Ins. Co., 124 N.C. 315, 32 S.E. 728; Creech v. Sun Life Assurance Co., 224 N.C. 144, 146, 29 S.E.2d 348.

■ The plaintiff contends that there was a constructive delivery of the policy on the night of September 18, while the defendant insists that the evidence is not sufficient to support such a finding and also relies on the policy limitations on the authority of the agent to deliver the policy until he first receives the full first premium and actually delivers the policy during the lifetime and continued insurability of the applicant.

There is ample evidence to warrant the inference that this policy's effective date was the date of its issue because of the payment of the premium in advance. The agent had told the applicant the premium paid put it in force when the medical department approved the application. The policy as issued was the identical insurance applied for as to plan and amount; the application of a higher rate in no way altered the plan nor amount of insurance; the company approved the application for the amount and plan. Of course it recognized that the applicant could refuse to accept the policy by reason of the increased rate but the evidence justifies the inference that the company expected the insurance to become effective according to its terms on Aug. 1 if the insured would accept it at the increased rate. It was not contemplated that this policy would have its effective date at the moment of its delivery and that the premiums would be payable every quarter thereafter. On the contrary, the policy states: "However, if the premium is paid in cash when the application is taken and the applicant is insurable for the plan of policy and amount applied for, the risk shall be assumed as of that date, subject to all of the terms and conditions of the policy."

■ Agent Ware was not only the soliciting agent who procured the application and payment in advance of the premium necessary to expedite the effective date of the policy without regard to its delivery or the condition of the insured at the time of delivery, but here he was the company itself doing through him its will to place the policy as issued, having supplied him with the policy to deliver, the officially executed receipt and the voucher to be signed by Ware for his commissions of $55.04 out of a total premium of $122. The amount paid into the treasury of the company and retained by it not only covered its part of the premium but it would be due to return a part of it to the agent Ware. Since the balance of the premium was in reality to be paid to Ware, the circumstance is to be considered with the other evidence on the question of the power to waive the balance of the payment as a condition precedent to delivery and on the question of the constructive delivery of the policy. The recitals in the receipt and the application become merged into the policy as written and the clause just quoted from it shows it became effective by the payment of the premium in advance on its date of issue. Undoubtedly Ware had the power to deliver the policy. Stallings v. Occidental Life Insurance Co., supra. It is well settled in North Carolina, in the absence of fraud and in so far as the contract of insurance is concerned, the delivery of an insurance policy absolute and unconditional is a waiver of the stipulation for a previous or contemporaneous payment of first premium. Murphy v. Lafayette Mut. Life Ins. Co., 167 N.C. 334, 83 S.E. 461; Pender v. North State Life Ins. Co., supra.

■ It is not necessary that the policy should be placed in the physical possession of the insured in order to constitute delivery. Manual delivery is not the exclusive test. It is a matter of intention. Hardy v. Aetna Life Ins. Co., 154 N.C. 430, 439, 440, 70 S.E. 828; Waters v. Security Life & Annuity Co., 144 N.C. 663, 669, 57 S.E. 437, 13 L.R.A., N.S., 805. Here the contract was complete when Gurley acquiesced in the rat-

ing class given him. He did this unequivocally after he learned that the company would not change the rate nor issue a policy for a less amount at the standard rate. Sometime after 10 o'clock at night when he received from agent Ware this information, he told the agent that he accepted the policy as written and it seems reasonable to conclude that his acquiescence and acceptance communicated to the agent constituted a completion of the contract and constructive delivery of the policy. Had it not been the late hour of the night the policy would have been physically delivered to the insured. It would be an extreme technicality to hold that this would not constitute delivery. The facts here are similar to those in National Life & Accident Ins. Co. v. Holbrook, 5 Cir., 100 F. 2d 780, where the policy was not manually delivered because a key to the safe was unavailable. In the instant case, the parties had agreed on the completion of the contract and that the agent would bring the policy to him next morning.

There is nothing in the policy to show that a mere change in classification of rates would alter the effective date of the policy. While the application does state that the entire first premium must be paid in order to make the insurance effective, the policy plainly states that "if the premium is paid in cash when the application is taken and the applicant is insurable for the plan of policy and amount applied for, the risk shall be assumed as of that date." For reasons satisfactory to the company it did not see fit to incorporate into the policy a clause which would defer the effective date of the insurance until the additional premium due to a change of classification had also been paid. The policy conforms to the advice the agent gave the insured, not to worry, the insurance was in effect when the application was approved. In cases of conflicts between the application and policy as written, the policy controls. Ambiguities should be resolved in favor of the insured. Underwood v. State Life Ins. Co., 185 N.C. 538, 540, 117 S.E. 790.

Under all of the circumstances and the law in the above cited cases, it is decided that the insurance contract became effective Aug. 1, 1952; that delivery of the policy was not a condition precedent to its effectiveness due to the payment of the premium stated in the application; that the acceptance by defendant of the application for the plan and amount of insurance, although at a higher rate, became a binding contract on its date of issue if and when insured acquiesced in the change of rate, and on acceptance it related back to the date of issue; that the policy was constructively delivered to the insured on the night of Sept. 18, 1952 and was effective as of Aug. 1, 1952 and that the payment of the additional small portion of the premium was waived by the agent and that he was authorized, under all of the facts, to waive it, and that the defendant is liable.

Judgment will be entered accordingly.